## IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY PENNSYLVANIA

ESTATE OF RICHARD A.                    :
KEMPF, JR, Deceased Amanda              CIVIL ACTION
Kempf, Adminstratrix,

        Plaintiffs                      :

        v.                              NO.  2015-1811
                                        :
Washington County
John Temas, Warden
Washington County Correctional
Facility                                :

        Defendants                      :

**Type of Pleading:**

Complaint & Jury Trial Demand

**Filed on Behalf Of:**

Estate of Richard A. Kempf

**Counsel of Record For This Party:**

Herbert A. Terrell, Esquire
Pa. ID. No 26129
201 Liberty Street
McDonald, PA 15057
724-492-1548



EXHIBIT
tabbies
B

## IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY PENNSYLVANIA

| | | |
|---|---|---|
| **ESTATE OF RICHARD A. KEMPF, JR, Deceased Amanda Kempf, Adminstratrix,** | : | **CIVIL ACTION** |
| **Plaintiffs** | : | |
| v. | : | **NO. 2015-1811** |
| **Washington County AND John Temas, Warden Washington County Correctional Facility** | : | **JURY TRIAL DEMANDED** |
| **AND** | : | |
| **John or Jane Doe, Unknown Corrections Officers and Medical Staff, Washington County Correctional Facility** | : | |
| **Defendants** | : | |

## COMPLAINT

ESTATE OF RICHARD A. KEMPF, JR., Amanda Kempf, Adminstratrix, , Plaintiffs, sues, Washington County and John Temas, Warden, Washington County Correctional Facility, and John or Jane Doe, Unknown Corrections Officers and Medical Staff Personnel, employed at the Washington County Correctional Facility, Defendants, upon which the following is a statement of same:

## INTRODUCTORY STATEMENT

The Plaintiff's decedent, Richard Kempf, Jr., was charged with various

1

crimes, and being unable to post bail, the decedent was remanded into custody at the Washington County Correctional Facility ("County Prison"), Washington County, PA. While the decedent had been charged with the commission of various crimes, no trial or verdict had occurred, and, as such, the decedent was a pre-trial detainee.

At the time of his incarceration or detention, the decedent exhibited or progressively exhibited severe symptoms of drug withdrawal which were complicated or exacerbated by pre-existing symptoms of depression and other mental illness.  Notwithstanding that the decedent was known or should have been known to Defendants, to suffer from chronic drug addition, chronic and acute psychiatric illness, and to have been suicidal, upon the decedent's detention he was not properly diagnosed or continuously treated for these preexisting mental and physical health conditions.

The decedent, initially and during the remaining course of his brief custody, repeatedly requested and was denied medical care and treatment by Prison and medical staff.  In addition, a failure of supervision of Prison staff occurred in that once the decedent requested medical care or treatment, it should have become incumbent upon supervisory and front-line staff, not to be deliberately indifferent to what had become known by them (from empirical observation or otherwise) that the decedent was in need of continuing treatment, monitoring, and supervision.

As a result of deliberate indifference or benign neglect, the Plaintiffs' decent became suicidal. Prison and medical staff knew or should have known of the decedent's suicidal condition; and, despite learning that the decedent was suicidal, going through drug withdrawal, and, experiencing symptoms of mental illness, the Defendants' including, Unknown Prison Staff and Prison medical staff failed to continually assess the decedent and failed to continue to monitor the decedent for suicidal feelings and drug withdrawal symptoms he was experiencing.

Defendant Washington County is responsible in this lawsuit for failing to insure continued supervision and training. The County who, upon belief, had prior incidents of detainee suicide knew or should have known of the inadequacies of its supervision and training and willfully failed or acquiesced to the eventuality of harms sustained by the Plaintiffs' and the Plaintiffs' decedent. Despite the Prison and medical staff knowing they had a duty to prevent the decedent from harming himself, the decedent was subsequently pronounced dead due to asphyxiation by hanging.

## JURISDICTION

1.      Plaintiffs invoke this court's jurisdiction and seek to vindicate their rights under the United States Constitution, Fourteenth Amendments, and, under the laws of the United States of America, particularly the Civil Rights Act, Title 42, U.S.C.§ 1983. Additionally, Plaintiffs pursue their common law claims. Each claim

arises out of an incident that occurred in Washington County, and the City of Washington, and involves defendants County of Washington, its Warden of the Washington County Jail, and other persons employed by the defendants.

PARTIES

2.      Amanda Kempf, is the natural sister of Richard Kempf, Jr., deceased.  Ms. Kempf was also duly appointed by the Register of Wills of Washington County, PA, as Adminstratrix for the decedent's estate by the grant of letters of administration on March 26, 2015.  File No.  63-15-0387.  Exhibit A, attached hereto.

3.      Defendant John Temas, ("Temas") is presently named in his official capacity, until such time as a ruling by the Court occurs on such capacity claim. Temas is otherwise named in an individual capacity and was at all times material acting under color of state law in his capacity as Warden of the Washington County Prison, which is the County Jail in Washington County, Pennsylvania and is located at 100 W. Cherry Avenue, Washington, PA 15301

4.      Defendant Washington County ("County") is a local government unit organized, existing or operating under Pennsylvania law.  The County funds, implements policy for, and acts to supervise the Defendant County Jail and its Warden and employees.  The County Jail, by its Defendant Warden, at all times mentioned herein employed individuals whose job it was to provide a safe environment for persons being detained for trial, or awaiting further

4

disposition after criminal sentencing.  As described below, the County's official rules, regulations or its policies, customs and practices of deliberate indifference to the serious health concerns of Plaintiff and other detainees constituted violations of the Plaintiff's constitutional rights.

5.      Defendants John or Jane Doe, presently unknown, at all times material, was contracted employed or assigned by Washington County and/or the County Jail to provide medical care to the inmates of the Washington County Prison; as such, the actions and inactions of these employees, agents and servants was done on behalf of/as agents of Washington County, and thus constituted state action.

6.      Defendants John or Jane Doe, presently unknown, at all times material, were contracted, employed or assigned by Washington County and/or the County Jail to provide medical or correction officer or guard services at the County Prison. Until such time as a ruling by the Court occurs on any official capacity claim, said unknown Defendants are sued in an individual capacity as an agent, employee, or assign of Washington County, Washington County Prison.  The  actions and inactions of these unknown corrections officer(s), or medical personnel, as an employees, agent and/or assign were done on or on behalf of the other named defendants, including Defendant Washington County, and thus constituted state action.

5

## COMMON STATEMENT OF THE FACTS

7.    Prior to January 6, 2015, Richard Kempf, Jr., was documented by Washington County hospitals, local drug treatment facilities, and friends and family, to require extensive medical attention and care.  The decedent's records reflect illnesses he was treated for including chronic and acute drug addition, and, chronic psychiatric problems with retained diagnosis. The decedent was known as suicidal.

8.    On or about January 6, 2015, the decedent was arrested, charged with various crimes, and, detained or incarcerated at the Washington County Jail.  ("County Jail"). The decedent was unable to post bail.

9.    On or about January 6, 2015, upon his admission to the County Prison, the decedent was under the influence of heroin and/or cocaine.

10.    Upon being detained at the County Jail, the decedent was provided with superficial health and mental evaluations.  Defendant Prison Warden and/or Defendant County had hired or retained the Unknown medical or correction officer defendants to, *inter alia*, perform the initial in-take health evaluations.

11.    The health evaluation performed by Defendants included a mental health assessment.  It is presently unknown how the mental health assessment was to be administered.  In addition, it is presently unknown how the mental and/or health assessment employed by defendants would establish,

6

based upon any predetermined scale, or the Defendants' own inmate classification policy, that the Plaintiff's decedent was required to be classified as suicidal.

12.     As noted decedent's health evaluation and mental status evaluation was performed by Unknown named defendants.  These defendants prepared or should have prepared a "suicide screening inquiry."  Nevertheless, these same presently Unknown Defendants, at the time of the decedent's incarceration, documented in their assessments that the decedent possessed a history of suicidal ideation.  The said defendants documented that the decedent had a history for mental health treatment including depression and anxiety.  However, upon belief these defendants failed to document that the decedent had a history of drug and alcohol abuse. It is not clear if the same Unknown Defendants physically examined the decedent for intravenous drug use.

13.     The decedent's health evaluation performed by the Unknown named defendants revealed that the decedent apparently disclosed that he had undergone recent surgery for "kidney stones" and that the decedent had noticed "blood in his urine for several day' prior to the decedent's admission to the Prison.

14.     Subsequently on or about January 8, 2015, available medical evidence reveals that the decedent disclosed that he was in fact suicidal or had

7

thoughts of suicide because he was withdrawing from drugs.  This same

medical evidence, prepared by the Southwestern PA Human Services, Inc.,

Behavioral Health, and known to Defendants, reveals the decedent had not

been receiving any current treatment. It appears, on January 8, 2015, that the

decedent was prescribed anti psychotic medication, and yet inexplicably,

"cleared from suicide watch."

15.    Defendants, either individually or jointly, incorrectly and

unreasonably classified the decedent as "no suicide watch." If the decedent

had been continued to be classified as suicidal, the decedent would have been

more closely monitored and supervised while he remained at the Prison facility.

16.    The decedent's non-suicidal classification retained by Defendants

occurred notwithstanding the fact that a strong, substantial, and excessive

likelihood and risk of a suicide attempt existed in light of the decedent's suicidal

ideation, mental health treatment history, his mental illness, and, the

decedent's drug use including drug withdrawal.

17.    Furthermore, notwithstanding the continuing risk of harm to the

decedent, Unknown Defendants, either jointly or individually appear to have

been misinformed regarding what type of watch the decedent should have

been placed on, that the decedent was suicidal, and, that the decedent was

suffering from or had suffered from acute drug withdrawal.

18.    Upon belief, the decedent was placed in a cell or holding area,

8

by Defendants, with the Defendants' being aware that the decedent was undergoing drug use withdrawal and, that the decedent was suicidal.

19.    Upon belief, during the subsequent days of the decedent's detention, other inmates and or Prison staff witnessed the decedent repeatedly request, and or be denied, medical attention with regard to the decedent's drug withdrawal.

20.    Notwithstanding the decedent exhibiting clear overt signs of drug withdrawal, and symptoms of mental illness, Defendants, either individually or jointly refused to render any assistance or health care to the decedent.

21.    Despite the knowing, intentional and deliberate misclassification of the decedent, as not suicidal, correctional officers, or other medical staff, failed or refused to detect the preparations the decedent undertook to attempt his suicide.  The aforesaid staff failed to otherwise monitor or check on the decedent particularly on the February 2, 2015.

22.    On February 2, 2015, the decedent, due to his unabated drug withdrawal symptoms, and, apparently depression or other mental illness, obtained "bed sheets" climbed up onto a cell area, and hung himself.  It is believed the decedent was allowed to hang off of the cell door or area for a period of between twenty (20) minutes and forty-five (45) minutes prior to the decedent being discovered by Jail staff.

23.    On the same aforesaid date, the decedent was pronounced dead

9

due to asphyxiation by hanging.

## COUNT ONE

**(Plaintiff v. Defendant County)**
**42 U.S.C. Section 1983 and 14th Amendments**
**to the U.S. Constitution**

24.     The allegations of paragraph 1 - 23, inclusive are here incorporated by reference as though fully stated here at length.

25.     Defendant County of Washington, or its agents, employees, or assigns, were at all times material to this complaint responsible for the *de jure* or written policies, edicts, procedures, directives, regulations and funding to implement same for the County Jail and its Defendant Warden and staff.

26.     The County ("County") had an obligation and duty to Plaintiff to properly train, supervise and discipline any employee, including Defendant Unknown Defendants Does.

27.     The County knew or should have known that the training and supervision of said County Jail staff, employees, and supervisors was inadequate, insufficient, or inappropriate to enable staff and supervisors to deal with or respond to the situation presented by the facts of this lawsuit.

28.     Defendants County, prior to the subject occurrence, had by tacit or explicit consent, or deliberate indifference, allowed unlawful and unconstitutional regulations, rules, directive, etc. to exist which either because

of inadequate, inappropriate or insufficient training, or because of the facial application and implementation of same was the moving force behind the failure to treat a Plaintiff/ prisoner's condition, which resulted in further significant injury or the unnecessary and wanton infliction of pain.

29.    The Defendant County, by deliberate indifference or tacit acquiescence,  failed to properly train, supervise and discipline its jail staff, inclusive of the named Defendant Warden, and Unknown Defendants Does such that the violation of detainee' constitutional rights had become the accepted practice within the defendant County and its Jail.  The defendants had routinely acquiesced in and failed to take measures to prevent the aforesaid Jail misconduct and particularly the conduct alleged to have violated Plaintiff' constitutional rights.

30.    By failing to correctly classify the decedent and to insure he was monitored by Staff, Defendant County exhibited deliberate indifference to the known, substantial and obvious risk of a suicide attempt by the decedent, and disregarded that risk.  Defendant County failed to insure communication to correctional officers that the decedent was suicidal and going through drug withdrawal.

31.    The Defendant County, by and through, its staff, agents, employees, or assigns, exhibited deliberate indifference to the decedent's serious health needs, by failing to provide medication to alleviate the symptoms of the

11

decedent's drug withdrawal.  Upon belief, the decedent over the brief course of his detention, repeatedly requested and was denied any medication. The Defendants exhibited deliberate indifference to the decedent's serious medical needs by, *inter alia, knowingly*, intentionally and deliberately engaging in the following conduct:

a.      deliberately misclassifying the decedent as not suicidal,

b.      deliberately failing to timely provide him with medication to address his drug withdrawal symptoms,

c.      deliberately failing to take reasonable steps to prevent the decedent's attempt and/or eventual suicide, and by failing to communicate to the correctional officers that he was suicidal and going through drug withdrawal.

d.      by deliberately by placing the decedent in an area of the Jail where he was not monitored on a frequent basis;

e.      by deliberately or recklessly not monitoring the decedent in the area of the Jail where he was placed where such monitoring would have prevented the decedent's suicide;

f)      failing to institute policies requiring the protocol of a full medical and psychiatric screening prior to placing a prisoner, with known health concerns in a cell within jail custody;

g.      failing to institute policies of close monitoring of prisoners with known medical conditions or failing to insure that prisoner needs, such as drug

12

withdrawal medication, were furnished, as needed;

    h.    failing to institute policies assuring that inmates who suffer from known serious medical conditions, are not be placed in confinement which will or can exacerbate their symptoms or aggravate their health conditions;

    i.    failing to institute policies to insure that adequate and competent medical and psychiatric personnel would fully monitor and test the physical and psychiatric condition of the inmates prior to and during admission into the Jail facility;

    j.    failed to provide staff to insure that inmates would be continuously monitored.

    32.    The Defendant's aforesaid written or unwritten directives, regulations, practices, policies and/or customs, by their long standing nature and implementation had become the law or rule for Jail staff conduct include, without limitation, subjecting prisoners to cruel and unusual conduct which was inhumane.

    33.    Defendant County, upon belief, on prior occasion has been alleged to has been deliberate indifferent, as alleged by the Plaintiffs here, to the rights of pre-trial detainees.

    34.    As a proximate result of the defendants' official rules, regulations, or directives, or their unwritten policies, customs, and practices, as stated herein, Plaintiffs, individually and jointly sustained substantial injury, including, without

13

limitation: loss of the decedent's life, the decedent experiencing conscious pain and suffering prior to his expiration, the decedent's loss of enjoyment of life, the decedent's increased earning potential, the decedent's future earnings, the funeral and related expenses and any and all other damages to which the Plaintiffs may be entitled, including the Plaintiff's loss of comfort and society.

35.    The County violated the United States Constitution and specifically violated Plaintiff's liberty interest rights and Plaintiff's procedural due process rights under the 14th Amendment of the U.S. Constitution.  Defendants did violate 42 U.S.C Section 1983.

**WHEREFORE**,  Plaintiff demand judgment against the Defendant County and further demands an award of compensatory damages, in excess of $50,000.00 damages, costs, attorneys fees and any other relief including declaratory relief that the acts of Defendants were unconstitutional.  Plaintiff demands a trial by jury.

**COUNT TWO**
**(Plaintiff v. Defendant Warden)**
**42 U.S.C. Section 1983 and 14th Amendment to the U.S. Constitution**

36.    The allegations of paragraph 1 - 35, inclusive are here incorporated by reference as though fully stated here at length.

37.    Defendant Warden, or its agents, employees, or assigns, were at all times material to this complaint responsible for the *de jure* or written policies,

14

edicts, procedures, directives, regulations and funding to implement same for the County Jail and its agents, employees, assigns, supervisors, or staff.

38.    The Warden ("Warden") had an obligation and duty to Plaintiff to properly train, supervise and discipline any employee, including those persons responsible for the Plaintiff at the time he was delivered to it and them.

39.    The Warden knew or should have known that the training and supervision of said Jail staff, employees, and supervisors, etc.,  was inadequate,insufficient, or inappropriate to enable staff and supervisors to deal with or respond to the situation presented by the facts of this lawsuit.

40.    Defendant Warden, prior to the subject occurrence, had by tacit or explicit consent, or deliberate indifference, allowed unlawful and unconstitutional regulations, rules, directive, etc. to exist which either because of inadequate, inappropriate or insufficient training, or because of the facial application and implementation of same was the moving force behind the failure to treat a Plaintiff/ prisoner's condition, which resulted in further significant injury or the unnecessary and wanton infliction of pain.

41.    The Defendant Warden, by deliberate indifference or tacit acquiescence,  failed to properly train, supervise and discipline its jail staff, inclusive of the named Defendant Warden such that the violation of Plaintiff' constitutional rights have become the accepted practice within the defendant Warden and its Jail.  The defendants had routinely acquiesced in and failed to

15

take measures to prevent the aforesaid Jail misconduct and particularly the conduct alleged to have violated Plaintiff' constitutional rights.

42.     The Defendants' written or affirmative rules, regulations or directives, etc., or their unwritten policies, customs, and practices alleged to be unconstitutional, unconstitutionally applied, or which, although constitutionally neutral, nevertheless proximately caused Plaintiff injuries, because of inadequate, insufficient or inappropriate training, supervision or discipline,  include, without limitation:

a.     allowing the misclassification of  the decedent as not suicidal,

b.     failing to timely provide him with medication to address his drug withdrawal symptoms,

c.     failing to insure staff viewed the television monitors or to monitor the decedent, or by failing to insure the monitors were properly working on the date and time of the decedent's incident

d.     by failing to take reasonable steps to prevent the decedent's attempt and/or eventual suicide, and by failing to communicate to the correctional officers that he was suicidal and going through drug withdrawal.

e.     by allowing the placing of the decedent in an area of the Jail where he was not monitored on a frequent basis;

f.     by not monitoring the decedent in the area of the Jail where he was placed where such monitoring would have prevented the decedent's suicide;

16

and failing to institute policies requiring the protocol of a full medical and psychiatric screening prior to placing a prisoner, with known health concerns in a cell, upon temporary placement within jail custody;

g.      failing to institute policies of close monitoring of prisoners with known medical conditions or failing to insure that prisoner needs, such as drug withdrawal medication, were furnished, as needed;

h.      failing to institute policies assuring that inmates who suffer from known serious medical conditions, not be placed in confinement which will or can exacerbate their symptoms or aggravate their health conditions;

i.      failing to institute policies to insure that adequate and competent medical and psychiatric personnel would fully monitor and test the physical and psychiatric condition of the inmates prior to and during admission into the Jail facility;

j.      failing to exercise due care under the circumstances;

k.      failing to properly diagnose the plaintiff's medical and psychiatric condition;

l.       failing to maintain and provide alternate facilities, rooms, or holding areas where those with the Plaintiff's symptoms, or known conditions could temporarily reside.

m.      failed to provide staff to insure that inmates would be continuously monitored.

17

43.    The Defendant's aforesaid written or unwritten directives, regulations, practices, policies and/or customs, by their long standing nature and implementation had become the law or rule for Jail staff conduct include, without limitation, subjecting prisoners to cruel and unusual conduct which was inhumane.

44.    Defendant Warden, upon belief, on multiple prior occasion has been alleged to have been deliberate indifferent, as alleged by the Plaintiffs here, to the rights of pre-trial detainees.

45.    As a proximate result of the defendants' official rules, regulations, or directives, or his unwritten policies, customs, and practices, as stated herein, Plaintiffs, individually and jointly sustained substantial injury, including, without limitation: loss of the decedent's life, the decedent experiencing conscious pain and suffering prior to his expiration, the decedent's loss of enjoyment of life, the decedent's increased earning potential, the decedent's future earnings, the funeral and related expenses and any and all other damages to which the Plaintiffs may be entitled, including the Plaintiff's loss of comfort and society.

46.    The Defendant's acts and omissions, together with the aforesaid rules, directives, or procedures, were a direct and proximate cause of the pain, suffering, injury, and constitutional deprivations of Plaintiff.

47.    The Warden violated the United States Constitution and specifically

18

violated Plaintiff's liberty interest rights and Plaintiff's procedural due process rights under the 14th Amendment of the U.S. Constitution Defendant did violate 42 U.S.C Section 1983.

**WHEREFORE**, Plaintiffs demand judgment against the Defendant Warden and further demands an award of compensatory damages, in excess of $50,000.00 damages, costs, attorneys fees and any other relief including declaratory relief that the acts of Defendants were unconstitutional. Plaintiff demands a trial by jury.

## COUNT THREE
### (Plaintiff v. Defendant Unknown Defendant Does)
### 42 U.S.C. Section 1983 and 14th Amendment to the U.S. Constitution

48.    The allegations of paragraph 1 - 47, inclusive are here incorporated by reference as though fully stated here at length.

49.    The decedent had preexisting serious health conditions which should have been addressed at the time of his initial health evaluations. The decedent had existing health conditions, inclusive of drug use which should have been readily apparent during his evaluations by Unknown Defendant Does. The decedent was going through drug withdrawal and had a clear history of mental illness which, according to the Defendants' own rules, procedures, or policies meant that decedent was suicidal. Alternatively these same Defendants knew or should have known that the decedent was suicidal and had a particular vulnerability to commit suicide.

19

50.     Defendants Unknown Does, in their official and individual capacities exhibited deliberate indifference, to the serious medical needs of the decedent. The decedent had a clearly-established right to be protected from the risk of suicide and Defendant knew that they were violating his constitutional right in failing to take reasonable steps to prevent his suicide by misclassifying decedent as not suicidal.

51.     Defendants Unknown Does exhibited deliberate indifference to the decedent's serious health needs, by failing to provide medication to alleviate the symptoms of the decedent's drug withdrawal.  Upon belief, the decedent over the brief course of his detention, repeatedly requested and was denied any medication. The Defendants exhibited deliberate indifference to the decedent's serious medical needs by, inter alia, knowingly, intentionally and deliberately engaging in the following conduct:

a.     deliberately and/or recklessly misclassifying the decedent as not suicidal,

b.     deliberately and/or recklessly not providing the decedent him with medication to address his drug withdrawal symptoms,

c.     deliberately and/or recklessly not taking reasonable steps to prevent the decedent's attempt and/or eventual suicide, and by failing to communicate to each other that the decedent was suicidal and going through drug withdrawal.

20

d.      deliberately and/or recklessly placing the decedent in an area of the Jail where he was not monitored on a frequent basis;

e.      by deliberately and/or recklessly not monitoring the decedent in the area of the Jail where he was placed where such monitoring would have prevented the decedent's suicide;

f.      failing to exercise due care under the circumstances;

g.      deliberately and/or recklessly failing to properly diagnose the plaintiff's medical and psychiatric condition;

h.      deliberately and/or recklessly failing to maintain and provide alternate facilities, rooms, or holding areas where those with the Plaintiff's symptoms, or known conditions could temporarily reside.

52.      As a proximate result of the Defendants Unknown Does' actions, as stated herein, Plaintiffs, individually and jointly sustained substantial injury, including, without limitation: loss of the decedent's life, the decedent experiencing conscious pain and suffering prior to his expiration, the decedent's loss of enjoyment of life, the decedent's increased earning potential, the decedent's future earnings, the funeral and related expenses and any and all other damages to which the Plaintiffs may be entitled, including the Plaintiff's loss of comfort and society.

53.      The Defendant's acts and omissions, together with the aforesaid

21

rules, directives, or procedures, were a direct and proximate cause of the pain, suffering, injury, and constitutional deprivations of Plaintiff.

59.    Defendants Unknown Does violated the United States Constitution. Defendants violated Plaintiff's liberty interest rights and Plaintiff's procedural due process rights under the 14th Amendment of the U.S. Constitution Defendant did violate 42 U.S.C Section 1983.

**WHEREFORE**,  Plaintiffs demand judgment against the Defendants and further demands an award of compensatory damages, in excess of $50,000.00 damages, costs, attorneys fees and any other relief including declaratory relief that the acts of Defendants were unconstitutional.  Plaintiff demands a trial by jury.

**COUNT FOUR**
**WRONGFUL DEATH**

60.    The allegations of paragraph 1 - 59, inclusive are here incorporated by reference as though fully stated here at length.

The Estate bring this action pursuant to the Pennsylvania Wrongful Death Act, 42 Pa. Cons. Stat. Ann § 8301 and Pa. R.C. P. No. § 2202(a).

61.    The decedent did not bring an action for personal injuries during his lifetime, and no other action for the death of the decedent has been commenced against the defendant.

62.    As a direct and proximate result of the Defendants' aforesaid acts,

22

the Defendants are liable and the Plaintiffs seek the following damages:

(a) the funeral expenses for the decedent

(b) expenses of administration related to decedent's injuries; and

(c) any/all other damages as are permissible for her to recover in a wrongful

death action.

    **WHEREFORE**, the Estate demands judgment against Defendants, jointly,

severally, and individually in an amount to be determined by a jury after a trial by jury,

compensatory damages, interest, costs, attorney fees and any/all other relief as this

Court may deem appropriate, whether legal or equitable.

**COUNT FIVE**
**SURVIVAL ACTION**

    63.    The allegations of paragraph 1 - 62, inclusive are here incorporated

by reference as though fully stated here at length.

    64.    The Estate bring this action pursuant to 20 Pa. Cons. Stat. Ann. §

3373 and 42 Pa. Cons. Stat. Ann § 8302.

    65.    As a direct and proximate result of the Defendants' aforesaid acts,

the Defendants are liable and the Plaintiffs seek the following damages:

    (a)    decedent's pain and suffering between the time of his injuries and

the time of death;

    (b)    decedent's total estimated future earnings less his estimated cost of

personal maintenance;

23

(c)     lost earnings capacity;

(d)     decedent's loss of retirement and Social Security income;

(e)     decedent's other financial losses suffered as a result of his death; and

(f)     decedent's loss of the enjoyment of life; and

(g)     any/all other damages to which the Plaintiff may be entitled to, whether legal or equitable, in a Survival Action

**WHEREFORE**, the Plaintiff demands judgment against Defendants, jointly, severally, and individually in an amount to be determined by a jury after a trial by jury, compensatory damages, interest, costs, attorney fees and any/all other relief as this Court may deem appropriate, whether legal or equitable.

**Respectfully submitted,**

**Herbert A. Terrell, Esquire**
**PA Bar No. 26129**
**201 Liberty Street**
**McDonald, PA 15057**
**(724) 492-1548**
**(877)250-7379 (facsimile)**
**Email: hat@terrelllegal@com**

24

## VERIFICATION

Jan Ondra, Trustee on behalf of Barr Avenue Land Trust, and Barr Avenue Land Trust, verifies that the statements made in foregoing are true and correct to the best of his personal knowledge, information, and belief. The signers understand that the statements set forth in the Petition are made subject to the penalties of 18 PA Cons. Stat. Ann. Section 4904, relating to unsworn falsification to authorities.

Jan Ondra, Trustee and on behalf of
Barr Avenue Land Trust

# EXHIBIT A

# Short Certificate – Letters of Administration

| | | |
|---|---|---|
| *Commonwealth of Pennsylvania* | ) | |
| | ) | NO.   63-15-0387 |
| *County of Washington* | ) | |

I, **MARY JO POKNIS**, Register of Wills in and for the County of Washington in the Commonwealth of Pennsylvania. **DO HEREBY CERTIFY** that on the 26th day of March, 2015, **LETTERS OF ADMINISTRATION** on the Estate of **RICHARD A. KEMPF, JR.,** deceased, were granted to **AMANDA KEMPF** having first been qualified well and truly to administer the same. And I further certify that no revocation of said Letters appears of record in my office.

Date of Death   February 2, 2015

Social Security No.   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

Given under my hand and seal of office this 26th day of March, 2015.

_____

*Register of Wills*

**NOT VALID WITHOUT ORIGINAL SIGNATURE AND IMPRESSED SEAL**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon the following named person by depositing same in the U.S. Mail, postage prepaid and on the _____ day of _____, 2015:

April L Cressler, Esquire
Paul D. Krepps
Marshall, Dennehey, Warner, Coleman & Goggin
600 Grant Street, USX Tower
Suite 2900
Pittsburgh, PA 15219

_____
**Herbert A. Terrell**